UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AIDEE BAZAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:17-CV-00402 |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

## OPINION

The Court now considers State Farm Lloyds' ("Defendant") motion for summary judgment[1] coordinate supplement,[2] and alternative request for abatement,[3] as well as Aidee Bazan's ("Plaintiff") response.[4] After duly considering the record and relevant authorities, the Court **DENIES** Defendant's motion for summary judgment and alternative request to abate.

### I. BACKGROUND

Plaintiff had an insurance contract with Defendant insuring Plaintiff's residential property from certain types of damage.[5] Two storms allegedly damaged Plaintiff's property—the first on March 26, 2016 and the second on May 31, 2016—forming the basis of *two* different lawsuits against Defendant.[6]

With regard to the first storm (and lawsuit), Plaintiff submitted an insurance claim to Defendant which was assigned claim number 53-878R-218 ("218").[7] Defendant inspected Plaintiff's property, determined replacement cost value of the damages to be $1,441.45, and

---

[1] Dkt. No. 10.
[2] Dkt. No. 12.
[3] Dkt. No. 10 p. 9, ¶ 19.
[4] Dkt. No. 13.
[5] Dkt. No. 1-2 ¶ 7.
[6] *See* Dkt. No. 10 ¶¶ 4–12.
[7] *Id*. ¶ 5 n. 2.

issued no payment to Plaintiff since this figure was below Plaintiff's $3,069.00 deductible.[8] In November 2016, Defendant received a demand letter from Plaintiff's counsel, supported by a $22,439.82 adjustment from RAC Construction ("RAC").[9] Plaintiff filed suit approximately one week later, *but only with regard to the March 26, 2016 storm damage and corresponding insurance claim number 218*.[10] Plaintiff alleged breach of contract;[11] certain violations of the Texas Insurance Code ("TIC"),[12] including the Prompt Payment Act;[13] common law bad faith;[14] and gross negligence.[15]

The second storm occurred on May 31, 2016.[16] Approximately one week later, Plaintiff submitted her second insurance claim to Defendants, which was assigned claim number 53-896V-912 ("912").[17] Defendant inspected Plaintiff's premises again on July 1, 2016, and found replacement cost value of the damages to be $9,708.75.[18] After subtracting the deductible and depreciation, Plaintiff was issued payment for $2,528.33.[19] Defendant had also approved complete replacement of Plaintiff's roof, along with all coordinate accessories, so Plaintiff had Vicman Construction replace her roof and send Defendant an invoice for $7,000.00.[20] State farm thereafter issued a "supplemental" payment to Plaintiff for an additional $2,496.77 in replacement cost benefits.[21]

---

[8] *Id.* ¶ 5.
[9] Dkt. No. 10-2 pp. 7–25.
[10] *See* Dkt. No. 10-5 p. 4.
[11] *Id.* p. 11.
[12] *Id.* ¶¶ 31–37.
[13] *Id.* ¶¶ 52–56.
[14] *Id.* ¶¶ 60–64.
[15] *Id.* ¶¶ 65–66.
[16] Dkt. No. 10 ¶ 6.
[17] *Id.* ¶ 6 n. 9.
[18] *Id.* ¶ 6.
[19] *Id.*
[20] *Id.* ¶ 7; *see also* Dkt. No. 12-1 p. 5, ¶¶ 6–7.
[21] Dkt. No. 10 ¶ 7; *see also* Dkt. No. 12-1 p. 5, ¶ 9.

In September 2017, Defendant received another demand letter from Plaintiff's counsel, supported by the same $22,439.82 RAC estimate used previously for purposes of the first demand letter and lawsuit.[22] Nevertheless, and inexplicably, it appears Plaintiff filed her second suit against Defendant (the instant suit) approximately one week *before* his counsel sent the second demand letter.[23] *Plaintiff's second suit only concerns the second storm on May 31, 2016 and coordinate insurance claim 912.*[24] Otherwise, Plaintiff's pleading in the first and second cases are much the same, containing substantially similar factual allegations, and alleging similar damages and causes of action.[25]

In April 2017—in between the two lawsuits—Plaintiff entered into a settlement agreement with Defendant which clearly disposed of the first case.[26] After Plaintiff filed the second suit, Defendant removed it to federal court,[27] and filed the instant motion for summary judgment, contending that the settlement/release disposes of the present case as well.[28] Defendant supplemented its motion,[29] and Plaintiff timely responded,[30] rendering the motion ripe for review. The Court now turns to its analysis.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[22] Dkt. No. 10-4 pp. 25–59.
[23] *See* Dkt. No. 1-2 p. 1 (indicating that the instant suit was filed in state court on August 31, 2017).
[24] *Id.* ¶¶ 9–10.
[25] *Compare* Dkt. No. 1-2 pp. 5–15 (the present lawsuit) *with* Dkt. No. 10-5 pp. 2–18 (the first lawsuit). The Court observes that in the first lawsuit, there was an additional individual defendant, as well as an additional TIC § 541.060(a)(4) claim, and common claims of bad faith and gross negligence. The first suit was thus more expansive than the second.
[26] *See* Dkt. No. 10-3 pp. 2–10.
[27] Dkt. No. 1.
[28] *See* Dkt. No. 10.
[29] Dkt. No. 12.
[30] Dkt. No. 13.

matter of law."[31] A fact is material "if its resolution could affect the outcome of the action,"[32] while a genuine dispute is present "only if a reasonable jury could return a verdict for the non-movant."[33] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[34]

The movant bears the initial burden of showing the absence of a genuine issue of material fact,[35] but is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[36] The non-movant must then affirmatively demonstrate the existence of a genuine issue of material fact.[37] This demonstration must specifically indicate facts and their significance,[38] and cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation[.]"[39]

In conducting its analysis, the Court may consider evidence from the entire record, viewed in the light most favorable to the non-movant.[40] Rather than combing through the record on its own, however, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[41] Parties may cite to any part of the record, or bring

---

[31] Fed. R. Civ. P. 56(a).
[32] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[33] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[35] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[36] *See id.* at 323–25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995).
[37] *See Celotex Corp.*, 477 U.S. at 323.
[38] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[39] *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[40] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[41] *See* Fed. R. Civ. P. 56(e).

evidence in the motion and response.[42] By either method, parties need not proffer evidence in a form admissible at trial,[43] but must proffer evidence substantively admissible at trial.[44]

### III.    ANALYSIS

It is undisputed that the aforementioned settlement disposed of the first case. The only question at bar is whether that same settlement disposes of the present case. Defendant contends that it does under the doctrine of release as well as accord and satisfaction.[45] In the alternative, Defendant requests that the case be abated to reform the settlement.[46] In response, Plaintiff contends that the settlement only applied to the first lawsuit, or at a minimum, that it is at least ambiguous whether this is the case.[47] Then, Plaintiff argues this ambiguity generates a fact issue in his favor, barring summary judgment.[48] The Court first addresses Defendant's release and accord-and-satisfaction arguments, finding that they fail. Then, the Court turns to Defendant's abatement request, and finds that abatement is not warranted.

#### A.    *Release*

A release, "valid on its face, is a complete bar to any later action based upon matters covered in the release."[49] It is a creature of state law, properly analyzed by this Court on the basis of diversity jurisdiction. Release constitutes an affirmative defense,[50] and thus must be established by the defendant at trial.

---

[42] *See* Fed. R. Civ. P. 56(c).
[43] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[44] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy [her] burden of proof must be competent and admissible at trial.").
[45] Dkt. No. 10 pp. 6–10.
[46] *Id.* ¶ 19.
[47] Dkt. No. 13 pp. 5–6.
[48] *Id.* pp. 6–7.
[49] *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *9 (N.D. Tex. Aug. 23, 2007).
[50] *Id.*

In order to establish release as an affirmative defense, the defendant must prove "beyond peradventure" that the essential elements of a valid contract are met with regard to the settlement and release document,[51] including: "(1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding."[52] Moreover, the Defendant must establish that the action in question falls within the scope of that contract.[53]

Like any other agreement, "a release is subject to the rules of construction governing contracts."[54] Thus, the aim is to "give effect to the true intentions of the parties as expressed in the written instrument."[55] To this end, the contract "must be read as a whole rather than isolating a certain phrase, sentence, or section of the agreement."[56] Moreover, "[t]he language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent."[57] Importantly, the analysis is constrained to the four-corners of the contract itself, unless there is some sort of ambiguity therein, in which case the Court may reach to parole evidence to get at the meaning.[58]

Here, even assuming the settlement agreement is valid (neither party disputes this fact), the second suit and insurance claim 912 do not come within the scope of that agreement. As an initial matter, they are not referenced in the agreement. Although the second suit did not exist when the agreement was executed, claim 912 *did* exist at that time, and thus its absence from the language of the agreement is inexplicable unless it was not intended to be included.

---

[51] *Cont'l Cas. Co.*, 2007 WL 2403656, at *2.
[52] *See e.g.*, *McCoy v. Alden Indus., Inc.*, 469 S.W.3d 716, 728 (Tex. App.—Fort Worth 2015, no pet.).
[53] *Coppedge-Link ex rel. Coppedge v. State Farm Life Ins. Co.*, 2004 WL 1572913, at *3 (Tex. App.—Austin July 15, 2004, pet. denied) ("A release extinguishes a claim or cause of action and bars recovery *on the released matter*.") (emphasis added).
[54] *Coppedge-Link ex rel. Coppedge*, 2004 WL 1572913, at *4.
[55] *Id*.
[56] *Id*. (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)).
[57] *Id*. (citing *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999)).
[58] *Matlock v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 925 F. Supp. 468, 472 (E.D. Tex. 1996).

The language of the agreement is quite expansive. This too comes as no surprise, as any defense counsel worth their salt will try to limit their client's exposure as much as possible. Nevertheless, a careful reading of the agreement shows that even this expansive language is anchored to the first lawsuit and claim 218, or otherwise in terms that are not defined, and therefore which cannot be tied to claim 912 or the second suit. For example, the first paragraph of the "Recitals" section of the agreement covers claims "arising out of or related to" to first lawsuit and claim 218.[59] The second paragraph generally covers claims "pending in the Underlying Lawsuit," which is defined as the first lawsuit.[60]

The third paragraph covers damage "which was or could have been the subject of the Underlying Lawsuit . . . ."[61] The fourth paragraph covers claims "regarding the Insurance Claim [defined as claim 218] or the Underlying Lawsuit."[62] The fifth paragraph covers mental anguish related to the "Released Claim," which is a term the agreement does not define.[63] Similarly, other portions of the agreement only cover damages or claims related to the same, undefined, "Released Claim."[64] In sum, claim 912 and the second lawsuit do not come within the scope of the settlement agreement, and summary judgment cannot be granted in Defendant's favor on the basis of release.

### B. *Accord & Satisfaction*

An accord and satisfaction is "when parties make an agreement to discharge a disputed obligation by a lesser or different payment that is tendered and accepted."[65] Here, Defendant's

---

[59] Dkt. No. 10-3 p. 3.
[60] *Id.*
[61] *Id.*
[62] *Id.* p. 4.
[63] *Id.*
[64] *See id.* pp. 5–7.
[65] *See e.g., Hunt, Hopkins & Mitchell, Inc. v. Facility Ins. Corp.*, 78 S.W.3d 564, 568 (Tex. App.—Austin 2002, pet. denied).

argument is that the "agreement" is the aforementioned settlement agreement.[66] However, as noted, that settlement agreement does not cover the instant suit. Thus, Defendant's accord and satisfaction argument also fails.

    C.    *Abatement*

Finally, Defendant argues in the alternative that the Court should abate the case due to a provision in the agreement which states as follows:

> Should any court, by judgment or decree, determine this Settlement Agreement and Release does not fully and finally discharge every *such* claim, Claimant agrees to reform this Settlement Agreement and Release and to release any *such* claim or causes of action recited herein against Released Parties that become the subject matter of said judgment or decree.[67]

This provision only applies to "every *such* claim," which can only be a reference to claims previously mentioned in the agreement. As noted, the instant suit and claim 912 do not constitute any "such" claims. Accordingly, abatement is improper here.

### IV. HOLDING

For the foregoing reasons, Defendant's motion for summary judgment and alternative request to abate are **DENIED**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 28th day of March, 2018.

                                                                       Micaela Alvarez
                                                                       United States District Judge

---

[66] Dkt. No. 10 p. 10, ¶ 22.
[67] Dkt. No. 10-3 p. 9 (emphasis added).